

**SO ORDERED.**

**SIGNED this 21 day of August, 2006.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE** | ) | |
| | ) | |
| **LESLIE DWIGHT COFFEY,** | ) | **No. 05-14721** |
| | ) | **Chapter 11** |
| Debtor | ) | |
| | ) | |
| | ) | |
| **LESLIE DWIGHT COFFEY,** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **Adv. No. 06-1048** |
| | ) | |
| **PAULA COFFEY,** | ) | |
| | ) | |
| Defendant | ) | |

**M E M O R A N D U M**

This adversary proceeding is before the court on cross motions for summary judgment. Also, on July 13, 2006, the court entered an order that scheduled the cross motions for summary judgment for oral argument and that directed the parties to show cause why the adversary

proceeding should not be dismissed for failure to present a justiciable case or controversy. Having considered the motions, the supporting and responsive briefs, the affidavits, the stipulation of facts filed on June 6, 2006, and the arguments of counsel, the court will deny both motions and dismiss this proceeding without prejudice.

## UNDISPUTED MATERIAL FACTS

The parties were divorced by order of the Circuit Court of Hamilton County, Tennessee, on November 10, 2004. The state court did not make a division of marital property, and still had not done so at the time this adversary proceeding was initiated, although it is expected that it will do so.

On August 1, 2005, the plaintiff filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The creditor mailing matrix filed with the petition did not include the defendant's name and address. On August 5, 2005, the court issued a Notice of the Chapter 11 case stating, among other things, that all non-governmental creditors must file proofs of claim by November 28, 2005. On August 11, 2005, the court sent copies of the notice to all creditors listed on the mailing matrix.

On August 16, 2005, the plaintiff filed his schedules of assets and liabilities and related statements and schedules. The defendant was listed on the schedule of creditors holding unsecured nonpriority claims (Schedule F) as holding a claim in the amount of $1.00, which is not disputed, contingent, or unliquidated. The plaintiff's statement of financial affairs does make reference to the state court divorce action. Also on August 16, 2005, the plaintiff filed an

2

Amendment to Add Creditors, which added the defendant's name and address to the creditor mailing list. The parties stipulated that the amendment included a copy of the notice of the Chapter 11 case that stated the deadline for filing proofs of claim. The defendant did not file a proof of claim by the claims' deadline, or thereafter.

Previously, on July 27, 2004, the defendant filed a Chapter 7 bankruptcy case and Douglas R. Johnson was appointed the Chapter 7 trustee in the defendant's case. On August 22, 2005, Mr. Johnson, as trustee in the defendant's bankruptcy case, filed a notice of appearance in the plaintiff's Chapter 11 case.

On March 13, 2006, the court confirmed the Debtor's Second Amended Plan of Reorganization.[1] Article III of the plan (at p. 3) specifies that Class IV consists of "[a]llowed claims of Paula Coffey for property settlement arising in the divorce proceeding pending in the Hamilton County Circuit Court, whether fixed at confirmation or subsequent thereto." "Allowed Claims" is defined (at p.1) as "[a] claim which was scheduled by the debtors [*sic*] as nondisputed, non-contingent and liquidated or a claim filed in the office of the Clerk of the U.S. Bankruptcy Court to which no objection is made and allowed by the Court or which is allowed by the Court after an objection has been made thereto." The plan (at pp. 6-7) treats the Class IV claim as follows:

> Subject to approval by the Bankruptcy County in the case of *In re Paula Coffey*, No. 04-14823, the Debtor shall pay to Douglas Johnson, Trustee the sum of $60,000.00 out of the net/ sale procceds [*sic*] of any properties after satisfaction of valid liens and closing costs exclusive of any capital gains taxes payable at closing of any such sale. Nowthwithstanding [*sic*] the foregoing, such payment

---

[1] The complaint and the parties' Stipulation of Facts erroneously recite that the plan was confirmed on April 10, 2006.

>shall be made by the Debtor from any source no later than December 31, 2006. Such payment shall be in full satisfaction of any claims by Douglas R. Johnson, Trustee for Paula Coffey against the Debtor. In addition to the foregoing, any lump sum award made to Paula Coffey by the Hamilton County Circuit Court in *Coffey v. Coffey*, case no. 04D334, shall be paid to Paula Coffey (or to Douglas R. Johnson, Trustee if the settlement is not approved) as determined by the Bankruptcy Court in *In re Paula Coffey*, case no 04-14823, in monthly payments of $5,000 or the amount to amortize the lump sum over a period of sixty (60) months, whichever amount is less, with payments to begin thirty (30) days after the later of the Effective Date or the determination by final non-appealable order of the amount of such claim and to bear interest at the legal rate for federal judgments as determined as of the Effective Date or upon determination of the amount, whichever is later. Any noncash property awarded to Paula Coffey by the Hamilton County Circuit Court in *Coffey v. Coffey*, case no 04D334, shall pass directly to Douglas R. Johnson, Trustee for the bankruptcy estate of Paula Coffey, or to Paula Coffey, as determined by the Bankruptcy Court in *In re Paula Coffey*, case no 04-14823, in the manner prescribed by the Hamilton County Circuit Court such that the real property shall pass outside the Debtor's bankruptcy estate and shall not be subject to the claims of his unsecured creditors. Nothing in this Plan, except the limit on the amount of monthly payment to satisfy any lump sum property settlement award, shall restrict the jurisdiction of the Hamilton County Circuit Court in *Coffey v. Coffey*, case no. 04D334, to classify property held by either Debtor or Paula Coffey as marital property or separate property under Tennessee law make an equitable division, under Tennessee law, of property determined to be marital property.

The compromise described above was approved in the defendant's bankruptcy case by an order entered on April 10, 2006. Article VI of the plan (at pp. 9-11) provides, in pertinent part:

>a. The Debtor shall retain all assets awarded to him by the Hamilton County Circuit Court in *Coffey v. Coffey*, case no. 04D334, either as separate property, marital property or post-divorce property, and all creditors shall retain their liens and rights to and with respect to that property pursuant to the corresponding notes and security agreements subject to the terms of this Plan. All non-financial obligations of the Debtor to all classes of secured creditors under the respective contracts will continue to be applicable. The retention of assets by the Debtor is subject to the determination of the rights of Paula Coffey under any property division by the Hamilton County Circuit Court.
>
>b. Until such time as the Hamilton County Circuit Court in *Coffey v. Coffey*, case no. 04D334, has classified the property owned by either the Debtor

or Paula Coffey, or both, as martial or separate property and has made an equitable division of property determined to be marital property, Debtor may offer for sale any real property titled in his name and/or stock in or assets of any of the companies listed on his petition and/or schedules (hereinafter, any real property, stock, assets, or other items Debtor is allowed to offer for sale hereunder shall be "Property"). Within 48 hours of entering into a contract for sale of any Property, Debtor shall provide a copy of that contract to Paula Coffey and also to Douglas R. Johnson, Trustee for Paula Coffey until such time as the settlement with the Trustee referenced in Treatment of Class IV is consummated, and thereafter to Paula Coffey only. Mr. Johnson and Paula Coffey then shall have twenty (20) days in which to object to the sale and the handling of the proceeds therefrom and to file an objection to the sale with the Hamilton County Circuit Court in *Coffey v. Coffey*, case no. 04D334. The right to file an objection to the sale includes the right to request that the Hamilton County Circuit Court immediately determine whether the Property is separate property or marital property and, if it is marital property, to determine to which party it should be awarded prior to the sale. If the property under contract is awarded by the Hamilton County Circuit Court to the Debtor, then the net proceeds shall be payable to the Debtor. If the Property under contract is awarded by the Hamilton County Circuit Court to Paula Coffey (or to the Trustee if the settlement is not approved, as determined by the Bankruptcy Court in *In re Paula Coffey*, case no. 04-14823) either the Trustee or Paula Coffey may proceed with the sale and shall be entitled to receive the net proceeds of the sale directly, outside the Debtor's bankruptcy estate and such proceeds shall not be subject to distribution under this Plan. If the Hamilton County Circuit Court declines to classify the property or to award it at that time to Debtor or to Paula Coffey, the Hamilton County Circuit Court may enter an order either (i) approving the sale with the net sale proceeds held per the instructions of the Hamilton County Circuit pending the property division, or (ii) authorizing the payment of any net sale proceeds on debts secured by other properties, or (iii) forbidding the sale, in which case the Property shall be taken off the market and shall remain for classification and division in *Coffey v. Coffey*. Nothing in this Plan, shall restrict the jurisdiction of the Hamilton County Circuit Court in *Coffey v. Coffey*, case no. 04D334, to classify property held by either Debtor or Paula Coffey as marital property or separate property under Tennessee law or to make an equitable division, under Tennessee law, of property determined to be marital property. Once the Hamilton County Circuit Court has divided the marital assets and a final order has been entered in *Coffey v. Coffey*, case no. 04D334, the Debtor shall be entitled to sell any property awarded to him subject to satisfying all liens and encumbrances against the property being sold.

    c. All stays are lifted, including any stays of the divorce proceedings between the Debtor and Paula Coffey pending in the Hamilton County Circuit Court. Although the Court has retained jurisdiction to consider any defaults in the Plan, nothing in the Plan shall be interpreted to require any creditor to take any

action in the Bankruptcy Court prior to exercising any state law remedies against the Debtor or the Debtor's property as a result of a post-confirmation default under the Plan.

Two days after the confirmation of the plaintiff's Chapter 11 plan, the plaintiff filed the complaint initiating this adversary proceeding. In his complaint, the plaintiff seeks a determination that the defendant's property settlement claims "are discharged except for the deemed allowed claim of $1.00." The defendant filed an answer on April 14, 2006, and on July 10, 2006, the parties filed the cross motions for summary judgment. On July 13, 2006, the court entered an order scheduling the cross motions for summary judgment for oral argument and directing the parties to show cause why the adversary proceeding should not be dismissed for failure to present a justiciable case or controversy.

## LEGAL DISCUSSION

Section 1141(d) of the Bankruptcy Code as it existed prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,[2] provided, in pertinent part:

> (a) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> (A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(I) of this title, whether or not—

---

[2] BAPCPA amended § 1141(d), Pub. L. No. 109-9, §§ 321(d), 330(b), 708, 119 Stat. 23, 95-96, 101, 126-27, but, with one exception, the amendments apply only in cases commenced on or after October 17, 2005, *id.* § 1501(a), (b)(1), 119 Stat. at 216. The exception is the addition of Paragraph (5)(C), *id.* §§ 330(b), 1501(b)(2), 119 Stat. at 216, which is not pertinent to this proceeding.

      (i) a proof of claim based on such debt is filed or deemed filed under section 501 of this title;

      (ii) such claim is allowed under section 502 of this title; or

      (iii) the holder of such claim has accepted the plan; and

    (B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

  (2) The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title.

11 U.S.C. § 1141(d)(1), (2). Because the defendant did not timely file a proof of claim in the plaintiff's Chapter 11 case, the plaintiff argues that the defendant's property settlement claims are prepetition debts that were discharged pursuant to 11 U.S.C. § 1141(d). The defendant, on the other hand, argues that her rights in the marital property were not extinguished by the plaintiff's discharge because they are not prepetition debts at all, but rather they are property rights in the marital property that belong exclusively to her. Alternatively, the defendant argues that if the property settlement claims are deemed prepetition debts, they are not discharged if the plan "otherwise provides," and the plan does indeed "otherwise provide" for treatment of the property settlement claims rather than discharge of the claims.

  The court will first address the defendant's alternative argument. If one were to assume that the defendant's rights in the marital property were prepetition debts subject to discharge, the question is whether the plan "otherwise provide[s]" for those debts to be excepted from discharge. This argument does have some visceral appeal because there are extensive provisions in the plan addressing the matter of the property division between the parties, and the original plan and disclosure statement were filed after (albeit only eight days after) the deadline for filing

proofs of claim. Nevertheless, the plan defined Class IV as allowed claims of the defendant for property settlement arising out of the divorce proceeding pending in the state court. Because the defendant failed to file a proof of claim in the plaintiff's Chapter 11 case before the deadline for doing so, she had no allowed claim in the case, other than the nominal $1.00 claim previously scheduled by the plaintiff. Nowhere does the plan create an exception to discharge of any prepetition debt that the plaintiff owes the defendant.

The more persuasive argument made by the defendant is that her right to an equitable division of marital property is not a prepetition debt. Rather, it is her property right that cannot be extinguished by the plaintiff's discharge. The Sixth Circuit has held that, where the state court has determined that a nondebtor is entitled to a portion of marital property and has awarded a money judgment against the debtor as a distribution of the nondebtor's interest in the property, the award does not constitute a dischargeable debt. *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192 (6th Cir. 1996). Although the award in *McCafferty* was made prepetition, the Sixth Circuit has also held that, when a divorce proceeding is pending at the time the bankruptcy case is commenced, the state court should be permitted to divide the marital property because, "[u]ntil the [state court] makes a specific determination of the property rights as between the Debtor and his spouse, what is property of the Debtor's estate in this cause is unclear." *White v. White (In re White)*, 851 F.2d 170, 174 (6th Cir. 1988) (quoting and "find[ing] no error . . . in the reasoning of [the bankruptcy judge]"). The court explained:

> The Bankruptcy Code does not define a debtor's interest in property; the answer to that question must be made after reference to state law. With regard to the present pending state court divorce proceedings, the bankruptcy court has acted to

8

> permit the state court with expertise in such matters to decide questions that are an inherent part of the divorce process.
>
> . . . .
>
> . . . . The bankruptcy judge proceeded to lift the stay so that the state court might "determine the substantive rights of the parties under applicable, non-bankruptcy domestic relations law and to allow the parties to reach, or the state court to impose, a property settlement based on the state court's inquiry into the need for support and other factors under state law." At the same time, the bankruptcy court indicated its "exclusive jurisdiction over property of the Debtor . . . when the state court defines what is the property of the Debtor . . . ." . . . .
>
> . . . .
>
> We affirm the decision to lift the stay under the circumstances here because we are concerned that the Bankruptcy Code could otherwise be abused as a weapon in a marital dispute.

*Id.* at 173-74 (citations omitted). Accordingly, a state divorce court's division of marital property in a proceeding commenced prepetition is controlling with respect to property of the estate even if the division is made postpetition.[3] And, under *McCafferty*, property awarded to the nondebtor spouse never becomes property of the debtor's bankruptcy estate and its ultimate receipt by the other spouse is not the result of any "claim." It is a matter of ownership and property right.

The plaintiff relies on a Tennessee intermediate appellate court opinion for the proposition that *McCafferty* was superseded by the 1994 enactment of 11 U.S.C. § 523(a)(15), which

---

[3] The Bankruptcy Court for the Western District of Tennessee accepted this holding from *White* in *Hohenberg v. Hohenberg (In re Hohenberg)*, 143 B.R. 480 (Bankr. W.D. Tenn. 1992) (Brown, J.), although the court found that *White* was inapplicable under the facts of the case because the divorce complaint was filed postpetition. Judge Brown explained: "In the normal case, the state court therefore defines what the debtor's rights are in the marital property and then the bankruptcy court exercises exclusive jurisdiction over the debtor's property which has become property of the bankruptcy estate. The nondebtor spouse typically takes the marital property awarded to him or her free of the claims of the debtor spouse's creditors because the divorce was filed prior to creation of the bankruptcy estate." *Id.* at 485.

added an exception to discharge for domestic relations obligations not qualifying as alimony or support. *Scoggins v. Scoggins*, 136 S.W.3d 211, 214-15 (Tenn. Ct. App. 2003), *permission to appeal denied* (Tenn. 2004). The reliance on *Scoggins* is misplaced. Section 523(a)(15) can have no application unless it is first determined that the rights or obligations in question constitute a "debt." Indeed, a panel of the Bankruptcy Appellate Panel for the Sixth Circuit recognized the continued vitality of *McCafferty* just this summer when, presented with similar facts, the panel found that "*McCafferty* is controlling." *Hines v. Hines (In re Hines)*, No. 05-8065, 2006 WL 1792705, at *2 (6th Cir. June 29, 2006). The panel held that the nondebtor spouse's "separate property interest is not property of the Debtor's bankruptcy estate; it is not a dischargeable debt. As a result, the Debtor is prohibited from treating [the nondebtor's] property interest in the retirement plan as an unsecured, nonpriority claim." *Id.* at *4. Even the Tennessee Court of Appeals followed *McCafferty* just a few months before *Scoggins* was decided. *Guarino v. Corrozzo*, No. M2001-02789-COA-R3-CV, 2003 WL 152641, at *2-*3 (Tenn. Ct. App. Jan. 23, 2003) (alternative holding that order to pay 40% of pension plan to nondebtor spouse was property division and did not create debt dischargeable in bankruptcy).

Thus, everything depends on whether the state court makes an award to the defendant and, if so, how it fashions that award. If it is fashioned as a mere property division, then no debt will have been created between the spouses and no issues of discharge will arise. For this reason this case is not now ripe for adjudication. The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). As such it may be raised by the

court *sua sponte*. *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003).

The Sixth Circuit has recently explained:

> In performing the ripeness inquiry, we must weigh three factors when deciding whether to address the issues presented for review: 1) "the likelihood that the harm alleged by the plaintiffs will ever come to pass"; 2) "whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims"; and 3) "the hardship to the parties if judicial relief is denied at his stage in the proceedings."

*Kentucky Press Ass'n, Inc. v. Commonwealth of Kentucky*, , No. 05-5224, 2006 WL 1867118 (6th Cir. July 7, 2006) (quoting *Adult Video Ass'n v. Dep't of Justice*, 71 F.3d 563, 568 (6th Cir. 1995)).

Because the Tennessee divorce court has not acted with respect to the property of the parties in this case, it is quite possible that distribution of their marital property will not give rise to any claim at all by the defendant against the plaintiff, and it is therefore equally possible that this court would never have to rule on the question of the scope of the discharge.

When courts are asked to decide hypothetical questions based on contingencies that are impossible to predict or events that may never occur, they may decline to do so for reasons of justiciability. *See, e.g.*, *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 306 (3rd Cir. 2000) (holding issue not ripe because a dispute over it might never arise); *Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 260 (7th Cir. 1995) ("A claim is unripe when critical elements are contingent or unknown."); *In re Drexel Burnham Lambert Group, Inc.*, 995 F.2d 1138, 1146 (2d Cir. 1993) (Ripeness "turns on whether there are nebulous future events so

contingent in nature that there is no certainty they will ever occur."); *Cross v. Lucius*, 713 F.2d 153, 158 (5th Cir. 1983) (dismissing claim against state judges because there was no way of knowing how they would rule on a matter). Furthermore, no harm will inure to the plaintiff if this court does not rule, *a priori*, on whether hypothetical debts owed by the plaintiff to the defendant have been discharged. There will be time and opportunity for a court to decide any questions about the discharge after the state court has acted with respect to the parties' marital property.[4]  As for now, the record is not developed enough even for an educated guess on this subject.

Because this case is not ripe for adjudication, the court will dismiss the complaint for reasons of justiciability. A separate order will enter denying the cross motions for summary judgment and dismissing this adversary proceeding without prejudice.

###

---

[4] The court rejects the plaintiff's contention that it has exclusive jurisdiction to determine the effect of the discharge granted by virtue of confirmation of the plaintiff's Chapter 11 plan. *E.g.*, *ICCO Design/Build, Inc. v. Sunbrite Cleaners, Inc. (In re Sunbrite Cleaners, Inc.)*, 284 B.R. 336, 342 (N.D.N.Y. 2002). While the bankruptcy court has exclusive jurisdiction to apply certain of the exceptions to discharge set forth in 11 U.S.C. § 523(a), state courts routinely determine the effect of discharge under § 524(a). *E.g.*, *Guarino v. Corrozzo*, No. M2001-02789-COA-R3-CV, 2003 WL 152641 (Tenn. Ct. App. Jan. 23, 2003).